81 N.Y.2d 485 (1993)
617 N.E.2d 1047
600 N.Y.S.2d 931
The People of the State of New York, Respondent,
v.
Vasil Lesiuk, Appellant.
Court of Appeals of the State of New York.
Argued June 2, 1993.
Decided July 8, 1993.
D.J. & J.A. Cirando, Syracuse (John A. Cirando, Patrick J. Haber and Ivette C. Iza of counsel), for appellant.
George M. Dentes, District Attorney of Tompkins County, Ithaca, for respondent.
Chief Judge KAYE and Judges TITONE and BELLACOSA concur with Judge SMITH; Judge HANCOCK, JR., dissents and votes to reverse in another opinion in which Judge SIMONS concurs.
*487 SMITH, J.
On March 10, 1989, defendant was convicted, after a jury trial, of criminal sale of marihuana in the second degree. On June 7, 1989, following a probation violation hearing, County Court revoked defendant's sentence of probation for a previous drug-related conviction, and imposed a sentence of imprisonment. On appeal from both judgments, the Appellate Division withheld decision and remitted the matter to County Court for a determination of whether defendant had established the required materiality of the testimony of a previously unavailable informant (161 AD2d 21). Upon remittal and after a hearing at which the informant testified, County Court denied defendant's motion to set aside the verdict, and the Appellate Division affirmed (186 AD2d 296). Justice Yesawich, Jr. granted leave to appeal.
The primary issue before us is whether the Appellate Division applied the proper standard  "reasonable probability" that the outcome of the trial would have been different had the informant testified  in considering whether defendant established the required materiality of the testimony of the informant. For the reasons that follow, we conclude that the order of the Appellate Division should be affirmed.
Defendant's conviction arose from his sale of marihuana, on December 4, 1986, at the Viking Lanes in the Town of Dryden, Tompkins County. The trial evidence demonstrated that, on that date, an undercover police officer observed defendant hand a brown bag containing marihuana to a confidential police informant, Charles Harvey, in exchange for $1,650. Because the undercover officer was also involved in a stolen property sting investigation in Tompkins County, and other members of the undercover officer's narcotics unit were attempting to use Harvey to arrange another drug transaction involving defendant, the arrest of defendant was delayed until August 7, 1987.
County Court denied defendant's motion to dismiss the indictment against him on the ground, among others, that the *488 delay between the commission of the crime and his arrest deprived him of due process.
At the time of trial, the prosecution unsuccessfully attempted to locate Harvey. The prosecution presented evidence that the police contacted other informants, prosecutors in New Jersey, and Harvey's former wife, attempted to serve a subpoena on Harvey six months before the trial began, and put out an all-points bulletin in order to locate Harvey.
The jury rendered a guilty verdict. Prior to sentencing, defendant moved to set aside the verdict on various grounds, including newly discovered evidence consisting of an affidavit from Harvey stating that defendant did not sell or give any marihuana to him, and that the undercover officer gave him the marihuana to take to defendant. County Court denied the motion, without a hearing, and imposed sentence. In addition, following a probation violation hearing for an unrelated conviction, County Court revoked a sentence of probation and sentenced defendant to a term of imprisonment.
The Appellate Division, with two Justices dissenting, withheld decision on the appeal from both judgments and remitted the matter to County Court (161 AD2d 21, supra). The majority directed County Court to weigh all the relevant circumstances, including the informant's credibility, to determine in light of the entire trial record whether defendant established that "a reasonable probability [existed] that the outcome of the trial would have been different had the informant testified" (id., at 25). The dissent believed that "something less than `reasonable probability' is the appropriate standard of review" (id., at 27).
Upon remittal, County Court denied the motion to set aside the verdict, finding, among other things, that there were "no indicia of credibility" in the testimony of the informant, and that the informant is a career criminal "with ample motive to lie in order to right a wrong to Defendant, a long time acquaintance, whom he had previously deceived in order to serve his own self-interest." The Appellate Division affirmed, with the same two Justices dissenting (186 AD2d 296, supra). The majority concluded that "there is no reasonable probability that the outcome of the trial would have been different had Harvey testified" (id., at 297). The majority also rejected defendant's contention that the People failed to use good-faith efforts to produce Harvey at the time of trial (id.). The dissent relied on the reasons set forth in the dissent issued in the prior appeal (id., at 298).
*489 On this appeal, defendant asserts that the majority at the Appellate Division erred in applying the "reasonable probability" standard in considering whether the testimony of the informant, had he been produced at trial, would have created a different result in the outcome of the case. Defendant argues that the majority erroneously applied a standard which finds constitutional error when the prosecutor fails to release exculpatory evidence, rather than the lesser standard which inquires whether "there was the slightest suggestion in the record that [the] testimony [of the informant] would to the slightest degree establish any of the facts influencing the issue of guilt or innocence of the defendant" (People v Jenkins, 41 N.Y.2d 307, 313).
Jenkins controls this case. In Jenkins, the primary issue was the obligation of the People to produce at trial a confidential informant once in control of the police, who had become unavailable through no intention of the prosecutor, but through the otherwise excusable or justifiable act of the prosecutor. The confidential informant in Jenkins had moved to Florida, departing New York by means of a plane ticket provided by the Drug Enforcement Administration. We concluded that "where an unavailable informant is or has been under the employ or control of law enforcement authorities, the People have a duty to produce the informant or exert diligent efforts to effect the production of the informant for the defense" (id., at 309). The Court stated further that notwithstanding defendant's right of confrontation, due process and fairness, "the People should not be penalized when [an] informant has, on his or her own initiative, effectively disappeared after relinquishment of government control" (id., at 310). Thus, the Court concluded that in order for a defendant to compel production of a confidential informant, or dismissal of the charges, the defendant "must meet a higher burden and demonstrate that the proposed testimony of the informant would tend to be exculpatory or would create a reasonable doubt as to the reliability of the prosecution's case either through direct examination or impeachment" (id., at 310-311). It was in addressing the discussion of the facts by the dissenter and the dissenter's conclusions that (1) the People were bound to know that the informant would be crucial to the defense, (2) the unavailability of the informant deprived the defendants of a fair trial, and (3) the People were responsible for the informant's unavailability, that this Court stated that the dissent's discussion "would be persuasive if *490 * * * there was the slightest suggestion in the record that [the informant's] testimony would to the slightest degree establish any of the facts influencing the issue of guilt or innocence of the defendants" (id., at 313).
We reaffirm our holding in that case and conclude that where, as here, a defendant seeks the dismissal of an indictment for failure of the prosecution to produce a witness unavailable through no intention of the prosecutors, the defendant "must meet a higher burden and demonstrate that the proposed testimony of the informant would tend to be exculpatory or would create a reasonable doubt as to the reliability of the prosecution's case either through direct examination or impeachment" (id., at 310-311).
We cannot agree with defendant's assertion that even if the court applied the proper standard, the subsequent statement, affidavit and testimony of the informant created a reasonable doubt as to the reliability of the prosecution's case. Given its "peculiar advantages of having seen and heard the witnesses," the determinations of County Court must be accorded great weight (People v Prochilo, 41 N.Y.2d 759, 761). We will not disturb County Court's conclusions that there were "no indicia of credibility" in the testimony of the informant.
Next, we consider defendant's contention that the eight-month delay between the incident and his arrest deprived him of due process of law.
We have consistently held that "`unreasonable delay in prosecuting a defendant constitutes a denial of due process of law'" (People v Singer, 44 N.Y.2d 241, 253; People v Staley, 41 N.Y.2d 789, 791; see also, NY Const, art I, § 6). An unjustifiable delay in commencing the prosecution may require dismissal even though no actual prejudice to the defendant is shown (People v Singer, 44 NY2d, at 253-254, supra). Where there has been a prolonged delay, we impose a burden on the prosecution to establish good cause (see, People v Singer, 44 NY2d, at 254, supra). We recognize that there is a need to investigate to discover the offender, to eliminate unfounded charges, and to gather sufficient evidence prior to the commencement of a prosecution (see, id.). Thus, we stated that "a determination made in good faith to defer commencement of the prosecution for further investigation or for other sufficient reasons, will not deprive the defendant of due process of law even though the delay may cause some prejudice to the defense" (id., at 254).
*491 In this case, the undercover officer who had observed the transaction between defendant and the informant was also involved in a stolen property sting investigation in Tompkins County. Other members of the undercover officer's narcotics unit were attempting to use the informant to arrange another drug transaction involving defendant. We conclude that under these circumstances, the delay in arresting defendant did not deprive him of due process of law.
Finally, defendant argues that the trial court abused its discretion in excusing a sworn juror during the trial. CPL 270.35 provides, in part, that "[i]f at any time after the trial jury has been sworn and before the rendition of its verdict, a juror is unable to continue serving by reason of illness or other incapacity, or for any other reason is unavailable for continued service * * *, the court must discharge such juror." Construing CPL 270.35, we held a trial court must, prior to discharging or replacing a sworn juror based on continued unavailability, make a reasonably thorough inquiry and recitation on the record of the facts and reasons for invoking the statutory authorization (see, People v Page, 72 N.Y.2d 69, 73).
Here, the trial court's inquiry into the juror's unavailability and recitation on the record of the facts and reasons for invoking the statutory authorization in discharging the juror complied with our mandate in People v Page (supra) and there was no abuse of discretion by the court in discharging the juror.
Accordingly, the order of the Appellate Division should be affirmed.
HANCOCK, JR., J. (dissenting).
Charles Harvey, an eyewitness whom the People failed to produce at trial, would have testified at trial that defendant did not in fact sell him marihuana  the crime of which defendant now stands convicted. Harvey's affidavit, submitted with defendant's motion to set aside the verdict, stated that at the time of the alleged drug sale, defendant "did not sell me (or anyone else), or give me (or anyone else), any marijuana", that Harvey had previously told the police that defendant would not have any marihuana, and that Harvey had told a State Police officer that "he would not like what I had to say if I testified". The question in this case is thus whether in light of Harvey's probable testimony, defendant is entitled to a new trial pursuant to this Court's holding in People v Jenkins (41 N.Y.2d 307). I believe that he is.
In Jenkins, this Court established two separate bases for a *492 new trial when the People fail to produce a witness: when the witness' testimony "is likely to have been favorable to some degree in tending to exculpate the defendant or, alternatively, * * * [when] the witness' testimony could be impeached to a meaningful degree creating a doubt as to the reliability of the prosecutor's case" (Jenkins, supra, at 311 [emphasis added]). There can be no doubt in the present case that Harvey's testimony would tend to be exculpatory under the first of the two bases for a new trial. Indeed, no testimony could be more exculpatory than that of an eyewitness who would testify that defendant did not commit the acts comprising the crime for which he is to be tried.
The majority's contrary result  that Harvey is incredible as a witness and thus that his testimony could not have "created a reasonable doubt as to the reliability of the prosecution's case" (majority opn, at 490)  relies solely on the second of the two Jenkins bases and simply fails to address the first. That Harvey's testimony may or may not raise a reasonable doubt as to the prosecution's case under the second Jenkins standard can have no bearing on whether it tends to be exculpatory under the first.
Moreover, Harvey's ultimate credibility as a witness and whether a jury would believe his testimony is not a proper consideration in applying the first of the Jenkins tests. While Harvey's credibility may be relevant to ascertaining whether his testimony would raise a reasonable doubt about the People's case, whether the testimony tends to be exculpatory turns solely on its substantive content and not on the believability of the witness. The question depends on the nature of the evidence, its content and the facts it tends to prove  not on the quality of the evidence or its potential for influencing the resolution of the factual issue. The weight or credibility of that testimony  whether, in fact, it does exculpate defendant  is a determination for the jury. Significantly, this Court has acknowledged in the analogous situation of the failure to produce Rosario material that the significance or value of the content of the missing material, cannot properly be evaluated by a Judge and is left to defendant and, ultimately, the jury (see, People v Novoa, 70 N.Y.2d 490, 498-499; People v Perez, 65 N.Y.2d 154, 160; People v Consolazio, 40 N.Y.2d 446, 454). There is no reason to accord defendant's compulsory process rights less protection in the present case than those afforded defendants' due process rights in cases involving Rosario violations.
*493 Accordingly, I would reverse the order of the Appellate Division and remit the matter for a new trial.
Order affirmed.